Douglas Pahl, OSB No. 950476
DPahl@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

Counsel for Plaintiff and Debtor
*15005 NW Cornell LLC*

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>15005 NW CORNELL LLC, and<br><br>VAHAN M. DINIHANIAN, JR.<br><br>Debtors.[1] | Bankruptcy Case Nos.<br>19-31883-dwh11 (Lead Case)<br>19-31886-dwh11<br>Jointly Administered Under<br>Case No. 19-31883-dwh11 |
| 15005 NW CORNELL LLC, an Oregon limited liability corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>TASHA TEHERANI-AMI, IN HER CAPACITY AS THE TRUSTEE OF THE SONJA DINIHANIAN GST TRUST DTS 01/01/11,<br><br>    Defendant. | Adv. Proc. No. 20-03079-dwh<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: 15005 NW Cornell LLC (5523) and Vahan M. Dinihanian, Jr. (0871) (Case No. 19-31886-dwh11)).

PAGE 1- MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

{00461056:1}
153348536.1
153380208.1

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Plaintiff 15005 NW Cornell LLC ("***Plaintiff***" or "***15005 LLC***"), by and through undersigned counsel, submits the following memorandum in support of its Motion for Summary Judgment against Tasha Teherani-Ami, in her capacity as the trustee of the Sonja Dinihanian GST Trust DTS 1/1/11 (the "***Trust***"). Plaintiff relies on the Concise Statement of Fact (the "***CSF***") and the Declaration of Vahan M. Dinihanian Jr. (the "***Dinihanian Decl***.") filed herewith. Plaintiff also relies on the Stipulated/Agreed Facts filed at ECF 250 in Bankruptcy Case No. 19-31883-dwh, and incorporates those facts by this reference.

Additionally, Plaintiff states the following:

## INTRODUCTION

The Trust has made claims against Plaintiff in a separate adversary proceeding, seeking a judgment declaring that the Trust acquired half of Plaintiff's real estate interests in 2016. The Trust alleges that the transfer occurred when a judgment was entered in a divorce case against Plaintiff's manager, Vahan M. Dinihanian Jr. ("Dinihanian") or at some time after the entry of the judgment. Plaintiff has disputed the Trust's claim in the separate adversary proceeding, asserting that no transfer of its real estate interests has occurred. The present adversary proceeding was brought to avoid any transfer that allegedly occurred, as well as any claim the Trust may have against Plaintiff or its property.

Plaintiff was not a party to Dinihanian's divorce case, nor was Plaintiff a party to the judgment entered therein. Plaintiff received no consideration in exchange for the alleged transfer, and the transfer would have rendered Plaintiff insolvent. As a result, if a transfer actually occurred—which is disputed—it must be avoided.

PAGE 2- MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

{00461056:1}
153348536.1
153380208.1

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 20-03079-dwh    Doc 28    Filed 08/06/21

# FACTS

1. On August 21, 1993, Dinihanian married Tasha Teherani-Ami ("***Teherani-Ami***"). During their marriage, they had one child, a daughter named Sonja Dinihanian. CSF, ¶ 1.

2. On June 21, 2005, Dinihanian organized Eagle Holdings, LLC ("***Eagle***") by causing articles of organization to be filed with the Oregon Secretary of State. At all times, Dinihanian is and was Eagle's sole member and manager. Dinihanian executed an Operating Agreement for Eagle, on his own behalf as the sole member of the LLC, and on the LLC's behalf. CSF, ¶ 2.

3. In 2006, Dinihanian was to inherit a 50% tenant in common interest in the 37-acre parcel of real property located at 15005 NW Cornell Road, Washington County, Oregon ("***Cornell Property***"). Dinihanian's sister, Lillian Logan, was to inherit the other 50% tenant in common interest in the Cornell Property. CSF, ¶ 3.

4. Through his estate planning activities and upon advice of counsel, Dinihanian elected to convey his 50% TIC interest in the Cornell Property to a new LLC that would be formed. To accomplish this goal, Dinihanian caused articles of organization (the "***Articles***") for 15005 NW Cornell LLC to be filed with the Oregon Secretary of State on March 22, 2006. The Articles indicated that the LLC would be a manager-managed LLC. CSF, ¶ 4.

5. Immediately upon its organization, Dinihanian was appointed as manager of 15005 LLC. Dinihanian established a bank account for 15005 LLC. Dinihanian also executed an operating agreement dated March 17, 2006 (the "Original Operating Agreement"), which confirmed Dinihanian's role as the LLC's manager and Eagle as its sole member. CSF, ¶ 5.

6. On May 25, 2006, Dinihanian, acting as the manager of 15005 LLC, accepted a Warranty Deed (the "***Deed***") for a 50% tenant-in-common interest in the Cornell Property. The Deed also conveyed the 50% interest that Lillian Logan was to receive to three entities that she controlled (the "***Logan Entities***"). The Deed was recorded on June 13, 2006. CSF, ¶ 6.

7. 15005 LLC and the other co-tenants entered into a Tenancy in Common Agreement dated May 25, 2006 (the "***TICA***"), which governs the co-tenants' interests in the Cornell Property. Dinihanian continued to serve as the manager of 15005 LLC, a manager-managed LLC. CSF, ¶ 7.

PAGE 3- MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
{00461056:1}
153348536.1
153380208.1

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 20-03079-dwh    Doc 28    Filed 08/06/21

8. On December 30, 2010, Dinihanian executed a Restated Operating Agreement of 15005 LLC (the "**Restated Operating Agreement**"). Dinihanian executed the Restated Operating Agreement in three capacities: (1) on behalf of Eagle Holdings, (2) on behalf of himself as manager of 15005 LLC, and (3) on behalf of 15005 LLC. The Restated Operating Agreement confirmed that, as of December 30, 2010, Eagle Holdings was still the sole member of 15005 LLC, and Dinihanian remained the LLC's manager. CSF, ¶ 8.

9. On January 1, 2011, as a further part of his estate and tax planning, Dinihanian executed that certain Sonja Dinihanian GST Trust Agreement dated January 1, 2011 (the "**Trust Agreement**"). The Trust Agreement created an irrevocable trust named the Sonja Dinihanian GST Trust DTS 1/1/11 (the "**Trust**"). Dinihanian named his wife and Sonja's mother, Teherani-Ami, as trustee of the Trust, and indicated that he intended to cause Eagle Holdings to convey 500 units of its membership interest in 15005 LLC to the Trust. CSF, ¶ 9.

10. At approximately the same time he created the Trust, Dinihanian caused Eagle Holdings to assign half of its membership interest in 15005 LLC to the Trust. The transfer was made for estate planning purposes, and Eagle did not receive any consideration in exchange for its transfer. On January 1, 2011, Dinihanian and Teherani-Ami also executed a document titled Amendment No. 1 to the Restated Operating Agreement of 15005 NW Cornell LLC (the "**Amendment**"). The Amendment confirmed that Eagle Holdings had transferred half of its membership interest in 15005 LLC to the Trust, a change that was reflected in the ownership structure of 15005 LLC. The Amendment also indicated that all other provisions of the Restated Operating Agreement would remain the same. CSF, ¶ 10.

11. On August 22, 2012, Teherani-Ami commenced divorce proceedings against Dinihanian in Multnomah County Circuit Court, case number 1208-68730 (the "**Divorce Case**"). On March 22, 2016, a General Judgment of Dissolution of Marriage (the "**Divorce Judgment**") was entered in the Divorce Case to settle the dispute between Dinihanian and Teharani-Ami. The terms of the Divorce Judgment were reached by agreement of Dinihanian and Teherani-Ami. Pursuant to the Divorce Judgment, Dinihanian caused 15005 LLC to execute a deed of trust (the "**Trust Deed**")

PAGE 4- MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
{00461056:1}
153348536.1
153380208.1

Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 20-03079-dwh    Doc 28    Filed 08/06/21

encumbering the Cornell Property to secure Dinihanian's payment of a $2 million divorce settlement to Teherani-Ami (the "**Divorce Settlement Payment**") due in January 2019. Id. 15005 LLC was not a party to the Divorce Case, nor was it a signatory to the Divorce Judgment. CSF, ¶ 11.

12. After the Divorce Judgment was entered, pursuant to the Divorce Judgment and the TICA, Dinihanian caused 15005 LLC to make an offering to the other co-tenant owners of the Cornell Property to purchase its interest in the Cornell Property. Those offers were not accepted. CSF, ¶ 12.

13. On April 27, 2018, also in accordance with the Divorce Judgement, Dinihanian caused 15005 LLC to file a partition suit. Specifically, Dinihanian caused 15005 LLC to file a complaint in the Circuit Court of Washington County, to commence case number 18CV17059 (the "***Partition Litigation***"). CSF, ¶ 13.

14. A trial was held in the Partition Litigation in early 2019, and the Washington County Circuit Court subsequently issued an opinion letter stating, among other things, that the Cornell Property would be partitioned after a master planning process was completed, to enable that court to equitably divide the property. A judgment has not been entered in the Partition Litigation. CSF, ¶ 14.

15. Dinihanian has not caused 15005 LLC to sign or deliver a deed, or any other document, that would convey any portion of 15005 LLC's property to the Trust. Dinihanian Decl. ¶ 16. 15005 LLC has at no time been indebted to the Trust. 15005 LLC received no consideration for any transfer alleged to have occurred. CSF, ¶ 15.

16. In April 2019, Teharani-Ami brought an action to compel Dinihanian to cause 15005 LLC to transfer half of its interest in the Cornell Property to the Trust. Dinihanian Decl. ¶ 19. In her April 1, 2019 declaration, Teharani-Ami stated: "15005 NW Cornell, LLC, holds a 50% interest in the real property located at 15005 NW Cornell Road (the "Farm"). The other 50% interest in the [F]arm is held by other family members of Respondent. 50% of the shares in 15005 NW Cornell, LLC are held by Sonja's Trust, and the other 50% are held by Eagle Holdings, LLC…." Dinihanian Decl. ¶ 19, Ex. 10, ¶ 3.

PAGE 5- MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
{00461056:1}
153348536.1
153380208.1

Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 20-03079-dwh    Doc 28    Filed 08/06/21

17. At all relevant times, 15005 LLC's interest in the Cornell Property has been its primary asset, and at all relevant times, 15005 LLC has had no ongoing source of income. CSF, ¶ 16.

18. At all relevant times until the present, Dinihanian has served as the manager of 15005 LLC, a manager-managed LLC. Dinihanian has not resigned his position as manager of the LLC, nor has he been removed by a majority of the LLC's members or otherwise. CSF, ¶ 17.

## ARGUMENT

**A. Summary Judgment Standard.**

A party is entitled to summary judgment under the Federal Rules of Civil Procedure when "there is no genuine issue of material fact and the party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court grants summary judgment in favor of the defendant when the plaintiff is unable to make a showing sufficient to establish an element essential to that party's case, and on which that party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986). Only disputes over material facts, or those facts that might ultimately affect the outcome of the lawsuit under governing law, will preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists only if there is sufficient contradictory evidence such that a reasonable jury could return a verdict for the non-moving party. *Id*.

To defeat a motion for summary judgment, the nonmoving party must establish more than a "mere disagreement" or a "bald assertion" regarding the existence of a material issue of fact. *Harper v. Wallingford*, 877 F2d 728, 731 (9th Cir 1989). The nonmoving party must produce "at least some significant probative evidence tending to support its claim and cannot just state that it will discredit the moving party's evidence and proceed in the hope that something can be developed at trial in the way of evidence to support its claim." *T.W. Electrical Service, Inc. v. Pacific Electrical*

PAGE 6- MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
{00461056:1}
153348536.1
153380208.1

Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 20-03079-dwh    Doc 28    Filed 08/06/21

*Contractors Assoc.*, 809 F2d 626, 630 (9th Cir 1987); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 US 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts" (footnote omitted)); *Helsing v. Std. Ins. Co.*, 230 F Supp2d 1200, 1201 (D Or 2001) ("A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact."). When the factual context makes the nonmoving party's claim "implausible," the nonmoving party must come forward with "more persuasive evidence to support [its] claim than would otherwise be necessary." *Matsushita,* 475 US at 587.

**B. If a transfer of Plaintiff's property interest occurred, it was a fraudulent conveyance and must be avoided.**

**1. The law of fraudulent conveyance.**

Plaintiff disputes that any prepetition conveyance of its ownership interest in the Cornell Property to the Trust occurred. In fact, the trustee of the Trust appears to concede that mere weeks prior to the petition date. Dinihanian Decl. ¶ 19, Ex. 10, ¶ 3.

Assuming for the sake of argument a conveyance did occur, such a transfer would be avoidable. The Bankruptcy Code gives Plaintiff the power to "avoid any transfer of property of the debtor or any obligation incurred by the debtor" that is otherwise "voidable" by a real or fictitious (1) judicial lien creditor that extends credit as of the petition date, (2) unsatisfied lien creditor that extends credit as of the petition date, (3) or a bona fide purchaser of real property (perfected as of the petition date), or (4) unsecured creditor of the debtor. 11 U.S.C. §§ 544(a)(1)-(3), 544(b), 1107(a). Under Oregon law, present and future creditors may attack constructively fraudulent transfers if the

> debtor made the transfer…without receiving a reasonably equivalent value in exchange for the transfer or the obligation…and the debtor (A) Was engaged in or about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (B)

PAGE 7- MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
{00461056:1}
153348536.1
153380208.1

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 20-03079-dwh    Doc 28    Filed 08/06/21

Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

ORS 95.230(b). Additionally, a transfer or obligation is "fraudulent" to present creditors if the transfer is made "without receiving reasonably equivalent value in exchange" and the "debtor was insolvent as a result of the obligation." ORS 95.240(1). A fraudulent transfer claim under either ORS 95.230(b) or ORS 95.240(1) can be brought "within four years after the transfer was made or the obligation was incurred." ORS 95.280.

Oregon adopted an extremely "broad" definition of the term "transfer" for the purposes of its fraudulent transfer statute –

> "Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes a payment of money, a release, a lease and the creation of a lien or encumbrance.

ORS 95.200(12); *See also Greeninger v. Cromwell*, 140 Or. App. 241, 246 (Or. Ct. App. 1996) (noting that under the UFTA, Oregon has adopted a broad definition of the term "transfer" and concluding that a county executing a marital dissolution judgment is a "transfer").

It is beyond dispute that, if a portion of Plaintiff's property was transferred to the Trust, it was a "transfer" of Plaintiff's property. Therefore, to succeed on its claim, Plaintiff must establish:

(1) Plaintiff did not receive reasonably equivalent value in exchange; and

(2) Plaintiff was either (A) was engaged in or about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction, or (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

**2. Plaintiff did not receive reasonably equivalent value in exchange for its property interest.**

PAGE 8- MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
{00461056:1}
153348536.1
153380208.1

Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 20-03079-dwh    Doc 28    Filed 08/06/21

Determining whether a debtor received a reasonably equivalent value is a two-step process. *In re Brobeck, Phleger & Harrison LLP*, 408 B.R. 318, 341 (Bankr. N.D. Cal. 2009) (citations omitted). First, the court must determine that the debtor received value in exchange for the transfer. *Id*. "Value" is defined by the Bankruptcy Code for fraudulent transfer purposes as "property, or satisfaction or securing of a present or antecedent debt of the debtor...." *Id.*; *citing* 11 U.S.C. § 548(d)(2)(A); *also citing Wyle v. C.H. Rider & Family (In re United Energy Corp.)*, 944 F.2d 589, 595 (9th Cir.1991).

Second, if there was value in exchange, the court must determine whether the value of what was transferred was reasonably equivalent to what the debtor received. *Id*. (citations omitted). "In determining whether a transfer has been for an exchange of reasonably equivalent value, the court analyzes all the circumstances surrounding the transfer." *Id.*; *citing Brandt v. nVidia Corp. (In re 3dfx Interactive, Inc.)*, 389 B.R. 842, 862 (Bankr.N.D.Cal.2008); 5 Collier on Bankruptcy ¶ 548.05 [1] [b] at 548–35 (15th ed. rev.2002). The determination of reasonable equivalence must be made as of the time of the transfer. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 546, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994).

"Reasonable equivalence" does not require exact equality in value but instead means "approximately equivalent" or "roughly equivalent." *Id*. at 540 n. 4, 114 S.Ct. 1757. "Because the policy behind fraudulent transfer law is to preserve assets of the estate, reasonably equivalent value is determined from the standpoint of creditors; it is not determined from the defendant's perspective." *3dfx*, 389 B.R. at 863, *citing Frontier Bank v. Brown (In re N. Merch., Inc.),* 371 F.3d 1056, 1059 (9th Cir.2004) (proper focus is on the net effect of the transfers on debtor's estate and the funds available to unsecured creditors).

PAGE 9- MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
{00461056:1}
153348536.1
153380208.1

Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 20-03079-dwh    Doc 28    Filed 08/06/21

When examining the net effect of a transfer on the debtor's estate and unsecured creditors, a transfer in exchange for a redemption of an equity interest in the same debtor is fraudulent. *See In re Joshua Slocum, Ltd.*, 103 B.R. 610, 618 (Bankr. E.D. Pa.), *aff'd sub nom. In re Joshua Slocum Ltd.*, 121 B.R. 442 (E.D. Pa. 1989) ("The courts have uniformly concluded that a stock redemption by an insolvent company fails to supply reasonably equivalent value to the company); *citing In re Roco Corp.*, 701 F.2d 978, 982 (1st Cir.1983); *Schafer v. Hammond*, 456 F.2d 15, 17–18 (10th Cir.1972); *M.V. Moore & Co. v. Gilmore*, 216 F. 99, 100–01 (4th Cir.1914); *In re Pinto Trucking Service, Inc.*, 93 B.R. 379, 388 (Bankr.E.D.Pa.1988); *In re Ipswich Bituminous Concrete Products, Inc.*, 79 B.R. 511, 517 (Bankr.D.Mass.1987); *In re Louisiana Industrial Coatings*, 31 B.R. 688, 698 (Bankr.E.D.La.1983); and *In re DeFeo Fruit Co., Inc.*, 24 B.R. 220, 225 (Bankr.W.D.Mo.1982). A debtor's receipt of its own equity interest does not benefit that debtor. Such equity interests do not constitute assets on its balance sheet, nor do their return or cancellation reduce any liabilities on the debtor's balance sheet.

Plaintiff was not a named party in the Divorce Case. Plaintiff did not owe any debt or have any other obligation to the Trust or Teherani-Ami. The settlement in the Divorce Case dissolved the marriage of Dinihanian and Teherani-Ami, and resolved claims made between them. By contrast, the Divorce Judgment does not provide Plaintiff with any asset nor does it release Plaintiff from any debt or obligation. Plaintiff isn't a party to the Divorce Judgment. It did not sign as an acknowledging party.

Despite these facts, the Trust labors to treat 15005 LLC as though it were a party to the Divorce Judgment. The Trust argues that 15005 LLC somehow received consideration when the Trust, which also was not a party to the Divorce Judgment or Divorce Judgment, agreed to relinquish its equity in 15005 LLC.

PAGE 10- MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
{00461056:1}
153348536.1
153380208.1

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 20-03079-dwh    Doc 28    Filed 08/06/21

The Trust's efforts to manufacture a *quid pro quo* between entities that were not parties to the Divorce Judgment fall flat. The imagined consideration, in the form of surrendered equity, is illusory. The transfer itself never occurred. Had it occurred, the transfer would be voidable as a fraudulent transfer because 15005 LLC received nothing of value -- certainly nothing approaching reasonably equivalent value.

**3. Plaintiff reasonably believed or should have reasonably believed that it would incur debts beyond its ability to pay at the time of the alleged transfer.**

According to the Trust and Teherani-Ami, the Divorce Judgment accomplished two things: 1) half of Plaintiff's assets were to be transferred to the Trust, and 2) the remainder of Plaintiff's real property interests were encumbered by a deed of trust in favor of Teherani-Ami to secure Dinihanian's payment to her of $2 million. The deed of trust recorded against Plaintiff's property meets the definition of a "debt" under Oregon law. *See* ORS 95.200(3) and (5).

At the time the Divorce Judgment was entered, Plaintiff had no income with which it could pay off the trust deed before it matured. Whether Dinihanian would be able to sell or borrow against a one-quarter TIC interest in the Cornell Property, or partition the Cornell Property, prior to the trust deed maturing was speculative at best. In the end, it turned out the trust deed debt could not be paid when it came due and the bankruptcy cases were filed.

Plaintiff knew or should have reasonably known at the time that it was incurring debts beyond its ability to pay. 15005 LLC had no source of regular income. 15005 LLC had debts, including claims noted on the schedules in the main bankruptcy case. The transfer to the Trust, had one occurred, certainly would have increased the financial shortfall faced by 15005 LLC, leaving it will reduced assets that were insufficient to pay its debts as they came due. For this reason, and because the alleged transfer occurred without Plaintiff receiving any value at all, the transfer is constructively fraudulent and must be avoided.

PAGE 11- MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
{00461056:1}
153348536.1
153380208.1

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 20-03079-dwh    Doc 28    Filed 08/06/21

### C. The Trust's Affirmative Defenses Should be Dismissed.

The Trust asserted a battery of affirmative defenses, some of which overlap with one another (laches, statute of limitations, bad faith), and some of which are not actually affirmative defenses (failure to state a claim). The Trust's affirmative defenses are not supported by evidence and they must be dismissed.

To the extent that the Trust's affirmative defenses lack specificity, they fail to comply with the pleading requirements of Bankruptcy Rule 7008(c), which incorporates Federal Rule of Civil Procedure 8(c). Rule 7008(c) requires a non-exclusive list of affirmative defenses to be specifically plead. To be sufficiency pled under Rule 7008(c), court inquire as to "whether the Trustee was provided with fair notice of the defenses being asserted." *In re Endeavour Highrise, L.P.*, 432 B.R. 583, 647 (Bankr. S.D. Tx. 2010). "A pleading is deemed to give fair notice if the defendant 'sufficiently articulated the defense so that the plaintiff was not a victim of unfair surprise.'" *Id.*, citing *Home Ins. Co. v. Matthews*, 998 F.2d 305, 309 (5th Cir.1993). In multiple instances noted below, the Trust has failed to provide any factual basis to support its affirmative defenses. This insufficient pleading deprives Plaintiff of fair notice of the defenses being asserted by the Trust. In each instance, such inadequately pled defenses should be stricken.

In its First Affirmative Defense, the Trust asserts Plaintiff fails to state a claim. No specific facts or allegations are pled. As described above and in the supporting documents, Plaintiff has stated each elements of a fraudulent transfer avoidance claim associated with alleged transfer to the Trust.

In its Second Affirmative Defense, the Trust asserts Plaintiff's claims are barred by the applicable statute of limitations. The Divorce Judgment, which marks the earliest possible date of a transfer of an interest in the Cornell Property to the Trust, was entered March 22, 2016. Even as late

PAGE 12- MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
{00461056:1}
153348536.1
153380208.1

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 20-03079-dwh    Doc 28    Filed 08/06/21

as April 1, 2019, Teharani-Ami, the trustee of the Trust, stated under oath that the Trust was a 50% equity owner of 15005 LLC and 15005 LLC owned 50% of the tenant-in-common interest in the Cornell Property. Dinihanian Decl. ¶ 19, Ex. 10, ¶ 3.

As stated above, ORS 95.280 provides that a fraudulent transfer avoidance action can be brought "within four years after the transfer was made or the obligation was incurred." Plaintiff filed its Chapter 11 petition on May 21, 2019, fewer than four years after that date any arguable transfer.

Pursuant to Section 108(a) of the Bankruptcy Code, Plaintiff may commence an avoidance action within "two years after the order for relief." Section 546(a) provides companion language. Plaintiff filed its complaint in the present action on July 23, 2020, within two years after the order for relief.

In its Third Affirmative Defense, the Trust asserts that Plaintiff cannot file the present adversary proceeding because Dinihanian lacks the authority to authorize the filing of the complaint. The Court has ruled Dinihanian possessed ample authority, as manager of Cornell LLC, to file the petition for relief. [Dkts 305-306]. Plaintiff, as a properly filed Chapter 11 debtor, possesses the rights, powers and responsibilities of a debtor in possession under the Bankruptcy Code, including the authority to initiate avoidance actions.

The Trust also asserts that Dinihanian somehow lacks the postpetition authority to serve as manager of Cornell LLC because the debtor has yet to assume its operating agreement, which the Trust asserts is an executory contact. Regardless of the ultimate merits of that argument, which are being addressed separately, the Trust's assertion of lack of authority to file this adversary proceeding lacks any support on the record before the Court. Indeed, the record, including this Court's rulings, contradicts the Trust's assertions of lack of authority.

PAGE 13- MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
{00461056:1}
153348536.1
153380208.1

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 20-03079-dwh    Doc 28    Filed 08/06/21

In its Fourth, Fifth and Sixth Affirmative Defenses, the Trust, without alleging any specific facts, asserts that this adversary proceeding is barred by the doctrines of estoppel, judicial estoppel and issue or claim preclusion. The Trust generally references positions taken and admissions made by Plaintiff in the Partition Litigation. The Trust's defenses fail to comply with Rule 7008(c) in that they fail to identify specific positions taken or admissions made that are at odds with the avoidance Plaintiff seeks in this proceeding.

In addition, to merit estoppel, any identified statements would need to be akin to Teharani-Ami's April 1, 2019 sworn admissions that no prepetition transfer to the Trust had occurred: "15005 NW Cornell, LLC, *holds* a 50% interest in the real property located at 15005 NW Cornell Road (the "Farm"). […] 50% of the shares in 15005 NW Cornell, LLC *are held* by Sonja's Trust, and the other 50% *are held* by Eagle Holdings, LLC…." Dinihanian Decl. ¶ 19, Ex. 10, ¶ 3 (emphasis added).

In its Seventh Affirmative Defense, the Trust asserts that Plaintiff's action is essentially a challenge to a "liquidating distribution." As such, the Trust contends, any challenge to it must be brought under the Oregon Limited Liability Company Act and not as a fraudulent transfer action. The Trust also argues because a liquidating distribution challenge must be brought within the two-year statute of limitations set forth in ORS 63.235(4), such an action would be time-barred.

The Trust has referenced no Oregon authority for its bold proposition that ORS 63.235 provides the exclusive mechanism to challenge a transfer that could be characterized as a liquidating distribution. The statute certainly doesn't say as much. Instead, the Trust reaches its conclusion by citing to a readily distinguishable New York statute, Section 508(c) of the New York LLC Act, which states: "(c) Unless otherwise agreed, a member who receives a wrongful distribution from a limited liability company shall have no liability under this article *or other applicable law* for the

PAGE 14- MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
{00461056:1}
153348536.1
153380208.1

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 20-03079-dwh    Doc 28    Filed 08/06/21

amount of the distribution after the expiration of three years from the date of the distribution." (Emphasis added.) Significantly, the Oregon statute does not contain the "or other applicable law" restriction contained in the New York statute. The Trust has also cited *O'Connell v. Shallo (In re Die Fliedermaus, LLC)*, 323 BR 101 (Bankr.S.D.N.Y.2005), a bankruptcy case in which the court interprets the same distinguishable New York statute.

Again, assuming for the sake of argument that a prepetition transfer to the Trust occurred, Oregon law, including the Oregon LLC Act, does not preclude Plaintiff's fraudulent transfer action seeking to set aside such a transfer.

In its Eighth Affirmative Defense, the Trust asserts that Plaintiff filed this adversary proceeding in bad faith and for purposes of oppression. According to the Trust, Plaintiff, a chapter 11 debtor in possession, did not file this action to set aside the alleged prepetition transfer of half of its assets to its 50% shareholder for zero consideration. Instead, the Trust attributes to Plaintiff the alleged wrongdoing of Dinihanian, which is denied. The Trust asserts that Plaintiff brought this action for Dinihanian's malevolent purpose: to pressure Teharani-Ami to resign as trustee of the Trust, a result that will not be obtained if this action is successful. The Trust provides no factual support for this alleged abuse of process, nor does it provide legal support for proposition that such an allegation constitutes a cognizable affirmative defense to a fraudulent transfer claim brought by Plaintiff.

In its Ninth Affirmative Defense, the Trust asserts the defenses of laches and waiver, contending that prior to the petition date and for months after the petition date, Plaintiff failed to challenge the Divorce Judgment. Again, the Trust impermissibly attributes to Plaintiff, the debtor in possession, alleged prepetition delays and inaction by Dinihanian. Any defense premised upon the theory that Plaintiff, as the debtor in possession, waived arguments or rights by virtue of

PAGE 15- MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
{00461056:1}
153348536.1
153380208.1

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 20-03079-dwh    Doc 28    Filed 08/06/21

Dinihanian's prepetition conduct cannot be asserted against the debtor in possession as Plaintiff in this action.

As for any alleged post-petition delays, Plaintiff filed the present adversary proceeding approximately fourteen months after the May 21, 2019 petition date. Because Plaintiff commenced this avoidance action well within the guidelines established under Sections 108(a) and 546(a), there is no valid laches defense.

In its Tenth and final Affirmative Defense, the Trust asserts that the present adversary proceeding should be abated because of the separate adversary proceeding commenced by the Trust. This defense has been rendered moot due by the Court's orders, agreed to by the Parties, scheduling briefing and hearings in both adversary proceedings.

## CONCLUSION

For the foregoing reasons, if a transfer actually occurred, Plaintiff is entitled to summary judgment on its avoidance claim. Plaintiff seeks this Court's order that no prepetition transfer to the Trust occurred. To the extent such a transfer occurred, the transfer of half of Plaintiff's assets to an insider for no consideration is voidable as a fraudulent transfer. Because there is no genuine issue of material fact, Plaintiff is entitled to summary judgment.

Dated: August 6, 2021        **PERKINS COIE LLP**

By: */s/ Douglas R. Pahl*
   Douglas R. Pahl, OSB No. 950476
   DPahl@perkinscoie.com
   1120 N.W. Couch Street, Tenth Floor
   Portland, OR 97209-4128
   Telephone: 503.727.2000
   Facsimile: 503.727.2222

Counsel for Plaintiff and Debtor
*15005 NW Cornell LLC*

PAGE 16- MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
{00461056:1}
153348536.1
153380208.1

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 20-03079-dwh    Doc 28    Filed 08/06/21

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date set forth below they caused the foregoing **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** to be served via the CM/ECF system on the parties set forth below:

| | |
|---|---|
| Bruce H. Orr, OSB No. 813297<br>WYSE KADISH LLP<br>900 SW Fifth Ave., Suite 2000<br>Portland, OR 97204<br><br>Counsel for Defendant and Creditor<br>*Tasha Teherani-Ami, in her capacity as the Trustee of the Sonja Dinihanian GST Trust DTS 01/01/11* | Nicholas J. Henderson<br>MOTSCHENBACHER & BLATTNER, LLP<br>117 SW Taylor Street, Ste. 300<br>Portland, OR 97204-3029<br><br>Counsel for Debtor<br>*Vahan M. Dinihanian, Jr.* |

Dated: August 6, 2021       **PERKINS COIE LLP**

By: */s/ Douglas R. Pahl*
    Douglas R. Pahl, OSB No. 950476
    DPahl@perkinscoie.com
    PERKINS COIE LLP
    1120 N.W. Couch Street, Tenth Floor
    Portland, OR 97209-4128
    Telephone: 503.727.2000
    Facsimile: 503.727.2222

Counsel for Plaintiff and Debtor
*15005 NW Cornell LLC*

PAGE 1- CERTIFICATE OF SERVICE
{00461056:1}
153348536.1
153380208.1

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 20-03079-dwh    Doc 28    Filed 08/06/21